UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION


JOHN W. FISHER and JANICE B. FISHER, )
       Plaintiffs,                )
                                 )
      vs.                        )          1:08-cv-0908-LJM-TAB
                                 )
UNITED STATES OF AMERICA,     )
       Defendant.            )


## ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT

This matter comes before the Court on defendant's, the United States of America (the "United States"), Motion for Partial Summary Judgment (Dkt. No. 29) and plaintiffs', John W. Fisher and Janice B. Fisher (collectively, the "Fishers"), Motion for Partial Summary Judgment (Dkt. No. 32) (collectively, the "cross-motions") pursuant to Federal Rule of Civil Procedure 56(c).  In this case, the Fishers seek a refund of taxes paid in connection with a series of gifts to their children pursuant to 28 U.S.C. § 1346(a)(1). Neither party suggests that there is genuine issue of material fact that prevents the Court from entering judgment as a matter of law on the Fishers' claim.[1]  Fed. R. Civ. P. 56(c). The cross-motions raise a single issue, namely whether the gifts made by the Fishers to their children were transfers of present interests in property and, therefore, qualified for the gift tax exclusion under 26 U.S.C. § 2503(b)(1) ("§ 2503(b)(1)").  The Court has considered the parties' arguments and rules as follows.

---

[1] Accordingly, 26 U.S.C. § 7491, which shifts the burden of proof to the Government with respect to factual issues, is inapplicable in this case.

## I. <u>BACKGROUND</u>

In 2000, 2001, and 2002, the Fishers transferred 4.762% membership interests in Good Harbor Partners, LLC ("Good Harbor"), to each of their seven children (the "Fisher Children").  Compl. ¶ 10.  From the date of Good Harbor's formation through the 2002 transfer, Good Harbor's principal asset was a parcel of undeveloped land that borders Lake Michigan in Leelanau County, Michigan.[2]  *Id.* ¶¶ 7-9.  When filing their gift tax returns, the Fishers initially claimed the annual exclusion pertaining to each transfer.  *Id.* ¶¶ 15-16. However,  upon audit, the Government assessed a deficiency of $625,986.00 in additional gift tax owed.  *Id.* ¶¶ 17-18.  The Fishers paid the deficiency and filed a claim for refund, alleging, in part, that the gifts of membership interests in Good Harbor were gifts of present interests.  *Id.* ¶¶ 19-20.

The parties direct the Court to Good Harbor's operating agreement (Dkt. Nos. 29-3; 33-1, -2, -3) (the "Operating Agreement"), which provides that "[a]ll powers of the Company shall be exercised by or under the authority of the Management Committee[,[3] and d]ecisions of the Management Committee within its scope of authority shall be binding upon the Company and each Member."  Operating Agreement § 5.1.3.  Under Section 5.2.1, the Management Committee shall at all times appoint a "General Manager"[4] to supervise Good

---

[2] John W. Fisher contributed a small amount of cash towards the formation of Good Harbor.  Compl. ¶ 9.

[3] Under the Operating Agreement, the "Management Committee" consists of the Fishers.  Operating Agreement § 5.1.1.

[4] Under the Operating Agreement, "John W. Fisher shall be the General Manager."  Operating Agreement § 5.2.1.

Harbor's day-to-day operations.  *Id.* § 5.2.1.  "[T]he timing and amount of all distributions shall be determined by the General Manager."  *Id.* § 4.5.1.

Under Section 4.2.3, Good Harbor's "Capital Proceeds"[5] are distributed as follows: first, to the payment of all expenses associated with a "Capital Transaction;"[6] second, to the payment of Good Harbor's debts and liabilities; and third, to establish reserves which the General Manager deems necessary for future investments, capital improvements, debts, expenses, liabilities, or obligations.  *Id.* §§ 4.2.3.1-3.  Any balance leftover "shall be distributed to the Interest Holders in proportion to their Percentages."  *Id.* § 4.2.3.4.

Under Section 6.1, the Fisher Children can transfer their "Interest[s]" in Good Harbor if certain conditions of transfer are satisfied.  *Id.* §§ 6.1.1.1-6, 6.2.  The Operating Agreement defines "Interest" as "a Person's share of the Profits and Losses of, and the right to receive distributions from, the Company."  *Id.* § I at 4.  Under the Operating Agreement, this was the only interest that the Fisher Children could unilaterally transfer. *Id.* § 6.1.2.

Among the conditions of transfer is a provision granting Good Harbor the right to purchase the prospective transferor's interest at a price equal to the amount of the prospective transferee's offer ("right of first refusal").  *Id.* § 6.1.4.1.3.  Good Harbor has thirty days from the date it receives notice of the prospective transferee's offer to exercise

---

[5] The Operating Agreement defines "Capital Proceeds" as "the gross receipts received by the Company from a Capital Transaction."  Operating Agreement § I at 3.

[6] The Operating Agreement defines "Capital Transaction" as "any transaction not in the ordinary course of business which results in the company's receipt of cash or other consideration . . . including, without limitation, proceeds of sales or exchanges or other dispositions of property . . . financings, refinancings, condemnations, recoveries of damage awards, and insurance proceeds."  Operating Agreement § I at 3.

its right of first refusal.  *Id.* § 6.1.4.2.  If Good Harbor decides to purchase the prospective

transferor's interest, it can set a closing date for the purchase at any time between forty and

ninety days after the date it received notice of the prospective transferee's offer.  *Id.*  Good

Harbor will pay the prospective transferor with non-negotiable promissory notes that are

payable over a period of time not to exceed fifteen years, "in equal annual installments of

principal and interest, the first of which shall be due and payable one (1) year after the

Closing Date."  *Id.* § 6.1.4.3.1.  The Fisher Children may disregard Good Harbor's right of

first refusal only in the event of a transfer to the Fishers or their descendants by birth or

adoption.  *Id.* §§ 6.1.5, I at 3.

The Court adds additional facts as necessary below.


## II.  STANDARD

"While the Internal Revenue Code imposes a tax on gifts, 26 U.S.C. § 2501(a), a

donor does not pay the tax on the first $10,000[7] of gifts, other than gifts of future interests

in property made to any person during the calendar year."  *Hackl v. Commissioner*, 335

F.3d 664, 666 (7th Cir. 2003) (internal quotation marks and citation omitted).  "Internal

Revenue Code provisions dealing with exclusions are matters of legislative grace that must

be narrowly construed."  *Id.* at 668.  "An unrestricted right to the immediate use,

possession, or enjoyment of property or the income from property . . . is a present interest

in property."  Treas. Reg. § 25.2503-3(b).  Contrarily, "reversions, remainders, and other

interests or estates, whether vested or contingent, and whether or not supported by a

---

[7] In 2002, the amount of the annual exclusion was adjusted to $11,000 for
inflation.  Rev. Proc. 2001-59, sec. 3.19.

particular interest or estate, which are limited to commence in use, possession, or enjoyment at some future date or time" are future interests in property.  *Id.* § 25.2503-3(a).

"The sole statutory distinction between present and future interests lies in the question of whether there is postponement of enjoyment of specific rights, powers or privileges which would be forthwith existent if the interest were present."  *Hackl*, 335 F.3d at 667 (internal quotation marks omitted).  "In other words, the phrase 'present interest' connotes the right to substantial present economic benefit."  *Id.*  "Unless the donee is entitled unconditionally to the present use, possession, or enjoyment of the property transferred, the gift is one of a future interest . . . ."  *Stinson Estate v. U.S.*, 214 F.3d 846, 849 (7th Cir. 2000).

### III.  DISCUSSION

The Fishers make three arguments in support of their assertion that the transfers of interests in Good Harbor to the Fisher Children were gifts of "present interests in property." Treas. Reg. § 25.2503-3(b).  The Court considers each in turn.  First, the Fishers argue that upon transfer, the Fisher Children possessed the unrestricted right to receive distributions of Good Harbor's Capital Proceeds.  However, under the Operating Agreement, any potential distribution of Good Harbor's Capital Proceeds to the Fisher Children was subject to a number of contingencies, all within the exclusive discretion of the General Manager. Operating Agreement §§ 4.2.3-.3.4.  Accordingly, the right of the Fisher Children to receive distributions of Good Harbor's Capital Proceeds, when such distributions occur, is not a right to a "substantial present economic benefit."  *Hackl*, 335 F.3d at 667; *see Commissioner v. Disston*, 325 U.S. 442, 449 (1945) (holding that when a trust provides for

the distribution of the corpus or trust income only after some uncertain, future event, the trustee possesses a future interest.)

Second, the Fishers argue that upon transfer, the Fisher Children possessed the unrestricted right to possess, use, and enjoy Good Harbor's primary asset, the Lake Michigan beach front property. *See* Pls.' Br., Dkt. No. 33, at 9 (citing the affidavit of one of the Fisher Children, James A. Fisher). However, there is no indication from Good Harbor's Operating Agreement that this right was transferred to the Fisher Children when they became "Member[s]"[8] and "Interest Holder[s]."[9] Regardless, the right to possess, use, and enjoy property, without more, is not a right to a "substantial present economic benefit." *Hackl*, 335 F.3d at 667. It is a right to a non-pecuniary benefit.

Lastly, the Fishers assert that upon transfer, the Fisher Children possessed the unrestricted right to unilaterally transfer their interests in Good Harbor. The Fishers argue that this right is a present interest in property. *Cf. Hackl*, 335 F.3d at 667-68 (holding that the Hackls' gifts were not gifts of present interests, because "Treeco's restrictions on the transferability of the shares meant that they were essentially without immediate value to the donees.").

---

[8] The Operating Agreement defines "Member" as the Fishers and "any Person who subsequently is admitted as a Member of the Company." Operating Agreement § I at 5. In addition, "'Membership Rights' means all of the rights of a Member in the Company, including a Member's: (i) Interest; (ii) right to inspect the Company's boods and records; and (iii) right to participate in the management of and vote on matters coming before the Company." Id.

[9] The Operating Agreement defines "Interest Holder" as "any Person who holds an Interest, whether as a Member or as an unadmitted assignee of a Member or other Interest Holder." Operating Agreement § I at 4. As stated above, "'Interest' means a Person's share of the Profits and Losses of, and the right to receive distributions from, the Company." *Id.*

Under Section 6.1, the Fisher Children may unilaterally transfer their right to receive distributions from Good Harbor, but only if certain conditions of transfer are satisfied. Operating Agreement § 6.1.1-6.1.5. Among these conditions is Good Harbor's right of first refusal, which effectively prevents the Fisher Children from transferring their interests in exchange for immediate value, unless the transfer is to one of the Fisher's descendants (a "family member"). *Id.* § 6.1.4-6.1.5. Even an attempted transfer to a family member is not without restrictions. *Id.* §§ 6.1-6.1.1.6, 6.1.5. Therefore, due to the conditions restricting the Fisher Children's right to transfer their interests in Good Harbor, it is impossible for the Fisher Children to presently realize a substantial economic benefit. *Cf. Wooley v. U.S.*, 736 F.Supp. 1506, 1509 (S.D. Ind. 1990) (Dillin, J.) (holding that Wooley's gifts to his partners' capital accounts were gifts of present interests, because "each partner had the unrestricted and immediate right to withdraw [the] gifts . . . .").

## IV. CONCLUSION

Based on the undisputed facts, the Court **CONCLUDES** that the transfers of interests in Good Harbor from the Fishers to the Fisher Children were transfers of future interests in property and, therefore, not subject to the gift tax exclusion under § 2503(b)(1). Accordingly, defendant's, the United States of America, Motion for Partial Summary Judgment (Dkt. No. 29) is **GRANTED**, and plaintiffs', John W. Fisher and Janice B. Fisher, Motion for Partial Summary Judgment (Dkt. No. 32) is **DENIED**.

IT IS SO ORDERED this 11th day of March, 2010.


_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution to:

Lester H. Cohen
DEFUR VORAN LLP
lhcohen@charter.net

Kenyatta Patterson Cox
DEFUR VORAN LLP
kcox@defur.com

Troy Duane Farmer
DEFUR VORAN LLP - Fishers
tfarmer@defur.com

Jeffrey L. Hunter
UNITED STATES ATTORNEY'S OFFICE
jeff.hunter@usdoj.gov

Scott E. Shockley
DEFUR VORAN LLP
sshockley@defur.com

Douglas William Snoeyenbos
DEPARTMENT OF JUSTICE, TAX DIVISION
douglas.w.snoeyenbos@usdoj.gov