UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN W. FISHER and JANICE B. FISHER,<br>       Plaintiffs, | )<br>)<br>) |
| vs. | )    1:08-cv-0908-LJM-TAB |
| UNITED STATES OF AMERICA,<br>       Defendant. | )<br>)<br>) |

## ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT

This matter comes before the Court on defendant's, the United States of America (the "United States"), Motion for Partial Summary Judgment (Dkt. No. 59) and plaintiffs', John W. Fisher and Janice B. Fisher (collectively, the "Fishers"), Cross Motion for Partial Summary Judgment (Dkt. No. 67) (collectively, the "cross-motions") pursuant to Federal Rule of Civil Procedure 56(c). In this case, the Fishers seek a refund of taxes paid in connection with a series of gifts to their children pursuant to 28 U.S.C. § 1346(a)(1). The cross-motions raise a single issue, namely whether the transfer restrictions imposed upon the gifts made by the Fishers to their children should be considered in determining the value of those gifts under 26 U.S.C. § 2703(b)'s exception to the valuation rule in 26 U.S.C. § 2703(a). The Court has considered the parties' arguments and rules as follows.

## I. BACKGROUND

In 2000, 2001, and 2002, the Fishers transferred 4.762% membership interests in Good Harbor Partners, LLC ("Good Harbor"), to each of their seven children (the "Fisher Children") (the Fishers and the Fisher Children collectively, the "Members"). Compl. ¶ 10.

From the date of Good Harbor's formation through the 2002 transfer, Good Harbor's principal asset was a parcel of undeveloped land that borders Lake Michigan in Leelanau County, Michigan.[1]  *Id.* ¶¶ 7-9.  The Fishers filed gift tax returns for each transfer and paid the amounts shown as due on those returns.  *Id.* ¶¶ 15-16.  However, upon audit, the Government assessed a deficiency of $625,986.00 in additional gift tax owed.  *Id.* ¶¶ 17-18.  The Fishers paid the deficiency and filed a claim for refund, alleging, in part, that the transfer restrictions imposed upon the membership interests that the Fishers gifted to the Fisher Children should be taken into account when determining the value of those gifts.  *Id.* ¶¶ 19-20.

Good Harbor's operating agreement (Dkt. Nos. 29-3; 33-1, -2, -3) (the "Operating Agreement") provides that the Fishers formed Good Harbor primarily to engage in the business of investing in and holding for investment real property.  Operating Agreement § 2.3.2.  Under Section 2.3.1.5, the Fishers formed Good Harbor, in part, to select with whom they would be in "business" with and to keep Good Harbor's principal asset, the lakefront property, available for the Members' use.  *Id.* § 2.3.1.5.  The Fishers' other objectives were to discourage business disputes among family members, prevent partition of the lakefront property, and protect the lakefront property from the Members' individual creditors.  Id. § 2.3.1.4, 7-9.

Under Section 6.1, the Fisher Children can transfer their interests in Good Harbor only if certain conditions of transfer are satisfied.  *Id.* §§ 6.1.1.1-6, 6.2.  Among the conditions of transfer is a provision granting Good Harbor the right to purchase the

---

[1] John W. Fisher contributed a small amount of cash towards the formation of Good Harbor.  Compl. ¶ 9.

prospective transferor's interest at a price equal to the amount of the prospective transferee's offer ("right of first refusal"). *Id.* § 6.1.4.1.3. Good Harbor will pay the prospective transferor with non-negotiable promissory notes that are payable over a period of time not to exceed fifteen years, "in equal annual installments of principal and interest, the first of which shall be due and payable one (1) year after the Closing Date." *Id.* § 6.1.4.3.1. The Fisher Children may disregard Good Harbor's right of first refusal only in the event of a transfer to the Fishers or their descendants by birth or adoption. *Id.* §§ 6.1.5.1 at 3.

The Court adds additional facts as necessary below.

## II. STANDARD

### A. SUMMARY JUDGMENT

As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); s*ee also United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1267-68 (7th Cir. 1990). Motions for summary judgment are governed by Federal Rule of Civil Procedure 56 (c) ("Rule 56(c)"), which provides in relevant part:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Once a party has made a properly-supported motion for summary judgment, the opposing

party may not simply rest upon the pleadings but must instead submit evidentiary materials which "set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996). It is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which she relies. *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996). When the moving party has met the standard of Rule 56, summary judgment is mandatory. *See Celotex*, 477 U.S. at 322-23; *Shields Enters., Inc. v. First Chi. Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992).

In evaluating a motion for summary judgment, the Court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. *See Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996). The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson*, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). "If the

nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996).

### B.  VALUATION OF TRANSFERRED PROPERTY FOR TAX PURPOSES

Under § 2703(a), the value of any transferred property shall be determined without regard to "any option, agreement, or other right to acquire or use the property at a price less than . . . fair market value . . . , or any restriction on the right to sell or use such property." 26 U.S.C. § 2703(a)(1-2).  However, any option, agreement, right, or restriction that 1) is a "bona fide business arrangement"; 2) is not a device to transfer such property to members of the decedent's family for less than full and adequate consideration in money or money's worth; and 3) includes terms that are comparable to similar arrangements entered into by persons in an arms' length transaction shall be valued with regard to such option, agreement, right, or restriction.  26 U.S.C. § 2703(b)(1-3).

"In answering the question of whether a restriction constitutes a bona fide business arrangement, context matters." *Holman v. Comm'r of Internal Revenue*, 601 F.3d 763, 770 (8th Cir. 2010).  "[M]aintenance of family ownership and control of a business may be a bona fide business purpose."  *Id.*  However, the restriction at issue must foster active involvement in the business.  *Id.* at 772.  A "mere asset container" will not suffice.  *Id.*; *see Cent. States, Se. & Sw. Areas Pension Fund v. Fulkerson*, 238 F.3d 891, 896 n.3 (7th Cir. 2001) (holding in a different context that "passively holding investments without more cannot normally be considered to be a trade or business.").

### III. DISCUSSION

With regard to § 2703(b)'s first requirement, the Fishers argue that the transfer restrictions and, specifically, the right of first refusal imposed upon the Fisher Children by the Operating Agreement renders Good Harbor a "bona fide business arrangement." 26 U.S.C. § 2703(b)(1). In support, the Fishers assert that holding real estate for investment or development is a bona fide business. *See* Wison Aff. ¶ 6 (Affidavit of Larry J. Wilson, CPA/ABV, CVA).

The facts of this case are analogous to those in *Holman*. There, two donors created a limited partnership, funded it with common stock from a publicly traded company, and gifted limited partnership shares to their children. 601 F.3d at 765. There was no evidence indicating that the partnership employed a particular investment strategy or that the donors were "skilled or savvy investment managers whose expertise [wa]s needed or whose investment philosophy need[ed] to be conserved or protected from interference." *Id.* at 770, 771. The donors retained exclusive control of the partnership, and their children could not withdraw from the partnership or assign their interests unless certain transfer conditions were met. *Id.* at 766. The Eighth Circuit affirmed the Tax Court's conclusion that the restrictions upon the children did not serve a bona fide business purpose because the partnership was not a "'business,' active or otherwise." *Id.* at 770. In so holding, the *Holman* court distinguished a line of cases where active, ongoing business interests were preserved by the transfer restrictions at issue. *See, e.g.*, *id.* at 771 ("The underlying assett in [*Estate of*] *Bischoff* [*v. Comm'r*, 69 T.C. 32, 39-40, 1977 WL 3667 (1977)] was a pork processing business organized, controlled, and managed by three families who sought to assure their continuing ability to carry on their pork processing business without outside

6

interference, including that of a dissident limited partner.").

Here, as in *Holman*, there is no evidence that the Fishers had an investment strategy that was preserved by Good Harbor's formation.  In addition, the uncontradicted evidence demonstrates that neither the Fishers, nor the Fisher Children made an ongoing investment in the lakefront property to increase its commercial value.  *See* Deposition of James Fisher ("Fisher Dep.") at 14:16-15:20; 19:21-20:23 (establishing that, on occasion, James Fisher and one or more of his siblings (the Fisher Children) would travel to the lakefront property and, while there, engage in discussions about developing the property for the personal enjoyment of the Fisher Children and their offspring); *id.* at 20:24-25; 18:8-24 (establishing that upon Good Harbor's formation, the Fisher Children did not intend to sell the property); *id.* at 18:21-19:20; 21:1-13 (establishing that the Fisher Children were contacted by a potential buyer, who initiated the negotiation process for purchasing a portion of the lakefront property).  Furthermore, there no indication that the Fishers or the Fisher Children acquired or pursued the acquisition of additional real property as an investment for Good Harbor.  *Cf. Cent. States, Se. & Sw. Areas Pension Fund v. Personnel, Inc.*, 974 F.2d 789, 794-96 (7th Cir. 1992) (holding in another context that buying, repairing, advertising, and selling multiple properties annually rose to the level of a "trade or business.")

The Fishers direct the Court to evidence that a financial officer was employed to manage the expenses associated with owning the lakefront property.  *See generally* Deposition of Douglas Foy ("Foy Dep.").  The Fisher Children occasionally deposited money into Good Harbor's checking account, and the financial officer would distribute those funds towards real estate taxes and other expenses.  *Id.* at 21-23:7.  In addition, after a portion of the lakefront property was sold, proceeds were distributed to the Fisher Children

7

via Good Harbor's checking account. *Id.* at 26:22-29. Similar facts could be found in connection with every interest in real estate. They do not, as the Fishers assert, indicate that Good Harbor was a bona fide business. *See Holman*, 601 F.3d at 770 (reasoning that "[t]he donors [did] not . . . assert[ ] any facts to distinguish their situation from the use of a . . . partnership structure to hold a passbook savings account, an interest bearing checking account, government bonds, or cash.").

Altogether, the Court concludes that the Fishers have not raised an issue of fact with regard to whether Good Harbor is a "bona fide business" under § 2703(b). *See Cent. States, Se. & Sw. Areas Pension Fund v. White*, 258 F.3d 636, 643-44 (7th Cir. 2001) (holding in another context that renting apartments located above a detached garage did not constitute a "trade or business" because the apartments were "appendages of the[ homeowners'] primary residence[, and s]uch normal upkeep . . . could [not] be easily separated from the normal maintenance and upkeep that every homeowner performs."). Because the Fishers failed to satisfy their burden with regard to the first requirement under § 2703(b), there is no need for the Court to address the remaining two requirements.

## IV. CONCLUSION

For the foregoing reasons, defendant's, the United States of America, Motion for Partial Summary Judgment (Dkt. No. 59) is **GRANTED**, and plaintiffs', John W. Fisher and Janice B. Fisher, Cross Motion for Partial Summary Judgment (Dkt. No. 67) is **DENIED**. The United States' Motion to Strike Plaintiffs' Surreply (Dkt. No. 84) is **DENIED as moot**.

IT IS SO ORDERED this 1st day of September, 2010.

LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution attached.

Distribution to:

Lester H. Cohen
DEFUR VORAN LLP
lhcohen@charter.net

Troy Duane Farmer
DEFUR VORAN LLP - Fishers
tfarmer@defur.com

Jeffrey L. Hunter
UNITED STATES ATTORNEY'S OFFICE
jeff.hunter@usdoj.gov

Scott E. Shockley
DEFUR VORAN LLP
sshockley@defur.com

Douglas William Snoeyenbos
DEPARTMENT OF JUSTICE, TAX DIVISION
douglas.w.snoeyenbos@usdoj.gov